Derbigny, J.
delivered the opinion of the court.* I. In the discussion of the first question, the counsel for the plaintiff and appellee have appealed to principles of incontrovertible truth and soundness, but the application of which to the present case is by no means obvious, viz. that no offer or proposition, tending to a contract, can be binding on the person proposing, until the proposition be accepted; because there can exist no contract, without the concurrence and simultaneous will of the contracting parties.
To apply this principle to the present case, the counsel for the appellee have been reasoning throughout, as if Duplantier, the seller, on one side, and the appellants on the other were parties to this suit. The case of a merchant, proposing to another by letter to sell him merchandise, at a certain price, and withdrawing his proposition before acceptance, is quoted and relied on, as one which bears a strong resemblance to this. Duplantier must then be the person proposing, and Smith the person to whom the proposition is made. But does that agree with the fact? Is there in this case any feature which warrants the comparison? Surely not. And what are the facts here? Duplantier, the *441 proprietor of the land now in contest between the parties to this suit, made an absolute sale of that land to the partnership of Kemper & Smith. The contract was perfect and complete. Tlie right of Duplantier on the land was conveyed away, never to return, unless by consent of the purchasers, say of Kemper at least, and through a regular reconveyance of the property. Duplantier then could not retract, and his subsequent attempt to sell again a property, which he had already transferred and delivered, is a nullity, unless, as we have heretofore said, it is taken as a confirmation of the first sale.
The question may, therefore, be reduced to this. Can the purchaser, who has bought for himself and an absent person, take the whole bargain for himself, before the absent person has refused to accept?
The strongest authority which can be found in favor of the affirmative, is the Digest, 18, 1, 64. Fundus ille est mihi et Titio emptus. Quæro utrum in partem aut in totum venditio consistat, an nihil actum sit? Respondi, personam Titii supervacuo accipiendam (puto) ideoque totius fundi emptionem ad me pertinere.
By the Roman law, no body could stipulate for a third person, without authorisation. Inst. 3, 20, l. si quis. Therefore, when a stipulation *442 had been made by one for himself and another, if the stipulation was for a thing divisible, as a sum of money, the contract was valid for one half in favor of the party stipulating, and null as to the other moiety. In the case here presented, it is asked what will be the effect of the sale of an immoveable, thus made in favor of two persons, one of whom only stipulates, and it is decided, that the whole estate is acquired to the party stipulating, because, says Rodriguez, in his note upon that law, the sale is indivisible, and cannot be valid for a part only, as is a stipulation for a sum money.
The question settled by this law is not therefore that which arises here; the right of Titius to accept or refuse is not the subject. The validity of the sale is made the question—is it valid in whole or in part, or is it a nullity? Perhaps, this question arose upon a pretension manifested by the vendor to take the property back.
But what will be the use of that law? It is not law in this country; the Spanish code in matters of stipulation in favor of third persons differs altogether from the Roman. By the precise disposition of the Partida 5, 5, 48, any person may buy for another, and the person, in whose favor the purchase is made, may avail himself of it, if he pleases.
*443 Subsequent times have gone farther yet. By the law 3, tit. 8, book 3, del ordinamiento, the recopilacion 5, 16, 2, even pollicitations are made obligatory. Hodie tamen, de jure regio bene quœritur actio illi tertio, et sic corrigitur in hoc jus commune: ita disponit l. 3, tit. 8, lib. ordinament. imo quod magis est nedum precedit, quando quis stipuletur illi tertio absenti, sed etiam quando simpliciter et nudâ pollicitatione quis promittit absenti, ita aperte disponit praedicta lex. Ex qua bene nota quod hodie in nostro regno ex nuda pollicitatione oritur actio et corrigitur totustitulus de pollicitationibus. 2 Gomez, 700. On which article the following comment is to be found in the additions to the same chapter: de jure regio quemlibet alteri stipulari posse, et ex hujus modi, stipulationem directam actionem illi tertio acquiri, ut resolvit Gomez, docent Covarubias, Guthierez, Matienzo, Acevedo, Ceballos et aliicommuniter, no. 3 on the 7th law. tit. 11, part 5. The general opinion of the Spanish jurists predicated upon the law 2, tit. 16, book 5, of the Recopilacion de Castilla, seems therefore to be conformable that of Gomez: some of them going even so far as to say that, if the stipulation in favor of the absent has been made in a public instrument, it gives the right of an executory action, jus exequendi.—Sanchez alone is of the *444 that such a stipulation is of no effect before the acceptance of the absent, but even that opinion does not raise a doubt as to the validity of the stipulation; it only contends that the effect of it is not to take place before the acceptance. But, independently of any comment and of any disquisition, what can be more explicit than the law itself? Obligado uno a otro por promision o contrato, u de otro modo, debe cumplir y no puede exceptionar ni que se hizo entre ausenti, ni que no hubo tal estipulacion, ni que no fue ante escribano publico, ni que la obligacion fue hecha a otra persona privada, en nombre de otros ausentes, puesque, constando que se obligo, la ha de cumplir.
So much for the stipulations made in favor of a third person, unconnected with any right acquired by a contracting party present. But the subject immediately under our consideration, to wit, a stipulation made in favor of two persons, one of whom only is present, at the time of making the contract, is itself particularly mentioned by the same author, in the following article, in a manner that removes all doubts as to the validity of such stipulation in favor of both. Dubium tantum est siquis stipuletur copulative sibi et tertio extraneo decem, an ista stipulatio et promissio valeat, de jure communi et jure regio, et in quo valeat? et *445 breviter dico quod talis stipulatio et promissio intelligitur tantum facta in persona utriusque in solis decem, unde de jure communi valet in persona stipulatoris, pro medietate, et sic quinque; in persona vero tertii extranei erit inutilis; repectu alterius medietatis sibi contingentis in aliis quinque, &c. Hodie tamen de jure regio valeret talis promissio in utriusque persona, per dict. leg. ord. quilibet poterit agere pro medietate, and in the additions to that number, stipulantem copulative, sibi et extraneo, sibi tantum acquirere pro medietate, in alia vero inutilis eam esse stipulationem de jure communi, secus vero de jure regio, ut hic resolvitur comprobari facile potest, ex addictis numero precedenti.
A right is there given by the Spanish law to
the absent person in whose favor a stipulation is made, whether that stipulation be for his only benefit or for the joint interest of him and another person, present at the time of stipulating. In the first case some authors are of opinion that the stipulation is of no effect, until it is accepted, tho' the general doctrine be that such acceptance is not necessary. But, in the other case, that in which the obligor has entered into a contract with one of the obligees, no question is made as to the the contract in favor of both, and the necessity of an acceptance, on the part of the ab *446 sent person, for the purpose of giving the contract effect against the obligor is not even thought of.
As to the consequence of a refusal on the part of the absent person, with regard to the party who has undertaken to contract in the name of both, it is not a question to be examined in this case, because, for the reasons adduced in our first opinion, we do not think that any refusal has taken place on the part of the appellant.
Hitherto we have considered the appellee as a person entirely unconnected with the appellant, and having undertaken without any authorisation to make a purchase on the account of both. We have seen that, even if such was their relative situation, the contract entered into by the appellee would be valid, and would give to the appellant a right to one moiety of the property bought: but, when we consider that the parties were partners in trade, at the time this contract was entered into, not only the above principles apply to the case with additional force, but others come to their and, which put the claim of the appellant in a still more favorable light.
Partners in trade for the purpose of transacting the business of their concern, are tacitly vested with the necessary power to bind the partnership, in all such contracts as are within the sphere of its commerce. Within these limits each partner is *447 considered as the attorney of the others, and what ever he does is obligatory on them. If he transgresses those boundaries, he places himself in the situation of an attorney, who, exceeds his powers. But, are the acts of the attorney in such cases void ab initio? No: they maybe made valid by the approbation of the constituent. The attorney, says our code, cannot go beyond the limits of his power; whatever he does in exceeding that power is null and void, with regard to the principal unless ratified by the latter. Code civil 424, art. 24. That doctrine, is the same which existed before. Curia Phillipica, lib. 1, cap. 4, n. 20. The appellant then has a right to ratify and accept the purchase of t he land, which is the subject of this action, and the appellee cannot pretend that because he exceeded his powers in making it, the property belongs to him alone.
But, can the appellee be permitted to say that he exceeded his powers? Can he object to the validity of his own acts? Powers of attorney may be given by instruments under private signature, and even by letters. They are the title of the attorney against his constituent to prove, should it be denied, that he acted with due authority, and to make the constituent responsible for what he has done by his order. But the consti *448 tuent retains no voucher of his authorisation. If it should be permitted to the attorney, after having contracted in the name of his principal, to say, that he was not authorised, he might, should the bargain turn out an advantageous one, apply it to his own benefit. To that effect, it would be sufficient to conceal or destroy the evidence of his authorisation. So between partners (and be it understood, that we have seen nothing in this case that would justify any allusion to the parties). Independently of the powers derived under the articles of partnership, authorisation may be given by one to the other by letter or otherwise: and if the partner, thus authorised, should wish to enjoy alone the benefit of any advantageous transaction, made under such authorisation, nothing would be more easy for him than to secure it. Those reflections are made with the only view to shew how just is the rule which does not admit a party to contradict his own deed, a rule which applies here with particular force: for the act of the party imports the confession of a fact, the proof of which may be in his power alone. We are of opinion that the appellee, after having stipulated in his contract, in the name of the partnership, cannot be admitted to say that he was not authorised to that effect.
*449 For those reasons, in addition to those already expressed in our first opinion, we should think that the judgment rendered in this case ought not to be disturbed: but, as it further appears to us, that, at the commencement of the suit before the Spanish governor of Batonrouge, as mentioned in the proceedings in this case, the premises were in the hands of the appellee, as part of the partnership stock, and the proceedings in the said suit before the Spanish governor, whereby the appellee was dispossessed, appear irregular and illegal: it is ordered, adjudged and decreed, as the judge of the fourth district ought to have decreed, that the appellee be restored to the possession of the said tract of land, as described, and set forth in the proceedings in this case, to be held by him as part of the joint stock of the late partnership between him and the appellant, John Smith, until the final settlement and payment of the accounts of said partnership. And that a mandate do issue from this court to the court of the fourth district for the parish of Pointe Coupee desiring the said court forthwith to issue the proper writ to put the appellee in possession of the said tract of land accordingly.

 Martin, J. did not join in this opinion, naming been of counsel in the cause.